IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DAVID EARL COTTON, JR.,
     Plaintiff,

vs.                         Case No.:  3:18cv2127/LAC/EMT

DETECTIVE ROCKETT, et al.,
     Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff David Earl Cotton, Jr. ("Cotton"), a pre-trial detainee of the Walton County Jail, is proceeding pro se and in forma pauperis in this civil rights action. Presently before the court is Cotton's Amended Complaint (ECF No. 12), as well as his "Motion to Change Venue/Jurisdiction" (ECF No. 10) and "Habeas Corpus Motion to Dismiss" (ECF No. 11).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).   Upon screening the Amended Complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), it is the opinion of the undersigned that this action should be dismissed.

I.    COTTON'S ALLEGATIONS AND CLAIMS[1]

Cotton names sixteen Defendants in this case:  (1) Detective Jonathan Rockett with the Defuniak Springs Police Department, (2) Detective Austin Arnold with the Defuniak Springs Police Department, (3) Investigator Joseph Paul, with the Walton County Sheriff's Office, (4) "Unnamed Deputy in Arrest Report" with the Walton County's Sheriff's Office, (5) Judge Kelvin Clyde Wells, a judge for the Walton County Circuit Court, (6) Michael A. Adkinson, Jr., Sheriff of Walton County, (7) Mark Weeks, Police Chief/City Marshal of Defuniak Springs, (8) Matthew J. Richardson, Assistant State Attorney, (9) Frankie White, Assistant Public Defender, (10) Bruce Miller, Public Defender, (11) William "Bill" Eddins, State Attorney, (12) Office of the State Attorney for Walton County, (13) Office of the Public Defender for Walton County, (14) Office of the City Marshal/Defuniak Springs Police Department, (15) Walton County Sheriff's Office, and (16) Walton County Jail.

---

[1] The court relays the factual allegations included in Cotton's Complaint, Amended Complaint, and pending motions (ECF Nos. 1, 10, 11, 12).  Additionally, the court takes judicial notice of information available on the database maintained by the Clerk of Court for Walton County, Florida.  *See* Fed. R. Evid. 201; United States v. Berrojo, 628 F.3d 368, 369 (5th Cir. 1980) ("The doctrine of judicial notice permits a judge to consider a generally accepted or readily verified fact as proved without requiring evidence to establish it."); *see also* Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (district court permissibly looked to docket sheets in ruling on motion to dismiss because "docket sheets are public records of which the court could take judicial notice"); In re Salem, 465 F.3d 767, 771 (7th Cir. 2006) (taking judicial notice of state court dockets and opinions); Dawson v. Mahoney, 451 F.3d 550, 551 (9th Cir. 2006) (taking judicial notice of state court orders and proceedings); United States v. Mercado, 412 F.3d 243, 247–48 (1st Cir. 2005) (taking judicial notice of state court docket entries).

Cotton is currently facing criminal charges in the Walton County Circuit Court, Case No. 2018-CF-000326, specifically, one count of battery of a law enforcement officer (Count 1), one count of resisting arrest with violence (Count 2), two counts of possession of a controlled substance without a prescription (Count 3 and Count 5), and one count of possession of drug paraphernalia (Count 4).

Cotton alleges that on April 18, 2018, Detective Rockett and Detective Arnold trespassed on the private property of Ms. Lorretta Miller without a search warrant, and executed a warrant for his arrest issued by a court in Holmes County, Florida, for his failure to appear. Cotton alleges the Detectives also arrested him for the offenses with which he is charged in the pending Walton County case. Cotton alleges the Detectives illegally executed the Holmes County arrest warrant, by virtue of the fact that they were employees of the Defuniak Springs Police Department, and Loretta Miller's home (where the Detectives executed the warrant) was outside the city limits of Defuniak Springs. Cotton also alleges the Detectives were not authorized by Florida law to execute warrants. Cotton alleges the Detectives attempted to conceal the fact that they illegally executed the Holmes County warrant by falsifying information in the arrest report (for example, by stating that an employee of the Walton County Sheriff's Office (specifically, Investigator Paul) was present when the Detectives

executed the Holmes County warrant). Cotton alleges after his arrest, the Detectives transported him to the Walton County Jail.

Cotton alleges on April 20, 2018, Judge Wells determined that probable caused existed to detain him on the Walton County charges, and Judge Wells set bond in the amount of $50,000, based upon the information in the arrest report.  Cotton alleges the Public Defender's Office was appointed to represent him on the Walton County charges.  Cotton alleges Assistant Public Defender White filed a motion to suppress evidence based upon the illegal execution of the Holmes County arrest warrant, but APD White subsequently withdrew the motion to suppress despite her knowledge that the arrest report was fabricated and the arrest took place outside the Defuniak Springs city limits.  Cotton alleges APD White has not deposed all of the witnesses identified in the arrest report (for example, Ms. Lorretta Miller and Defendant "Unnamed Deputy in Arrest Report"), and White refused to provide him a copy of his "discovery" until October 5, 2018.  Cotton alleges White tried to persuade him to accept a plea.  Cotton alleges White has "totally misrepresented" him and provided "total ineffective assistance of counsel."  Cotton claims he is innocent of the charge of battery on a law enforcement officer.

Cotton alleges neither APD White nor Assistant State Attorney Richardson has sought dismissal of the charges despite their knowledge that the arrest report was

fabricated with facts suggesting that the Detectives were engaged in the lawful performance of their duties when they arrested him. Cotton alleges ASA Richardson attempted to introduce false evidence at the suppression hearing. Cotton alleges the State Attorney Defendants (the State Attorney's Office, State Attorney William Eddins, and Assistant State Attorney Matthew Richardson) are using the false evidence to maliciously prosecute him.

Cotton alleges he missed a court date on October 30, 2018, because an officer at the Walton County Jail fabricated an allegation that he attempted to spit on her. Cotton alleges a disciplinary team at the Jail found him guilty of the infraction.

Cotton brings claims of false arrest and malicious prosecution, based upon a lack of probable cause and intentional fabrication of the arrest report, in violation of the Fourth Amendment (ECF No. 12 at 9–10).[2] Cotton also asserts his Fifth Amendment right to remain silent has been violated (*id.* at 7). Cotton claims he is being denied effective assistance of counsel, in violation of the Sixth Amendment (*id.* at 5–6, 10). He also claims he is being subjected to slavery, in violation of the Thirteenth Amendment (*id.* at 10). Cotton claims he is being denied his right to a fair trial, in violation of the Fourteenth Amendment (*id.* at 7, 14). He also claims he is not

---

[2] The page references used in this Report reflect the page numbers automatically assigned by the court's electronic filing system rather than those Plaintiff may have assigned.

allowed to express himself, and is "ordered to be quiet" and "told when to eat, sleep, and drink," in violation of the First Amendment (*id.* at 7). Cotton additionally claims he is being subjected to cruel and unusual punishment, in violation of the Eighth Amendment, because is suffering severe stress and humiliation as a result of being falsely arrested and held against his will on false allegations (*id.*).

Cotton seeks habeas corpus relief and dismissal of the Walton County charges on the ground that the arrest report was intentionally fabricated (*see* ECF No. 11; ECF No. 12 at 12). Cotton also seeks "to sue for the maximum amounts" (*id.* at 9).

## II.   DISCUSSION

The court is statutorily required to review Cotton's Amended Complaint to determine whether this action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.   *See* 28 U.S.C. § 1915(e)(2)(B).   To survive dismissal at the screening phase, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation marks and citation omitted).   A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).   Plausibility means "more than a sheer

possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citation omitted). The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* (citing Fed. R. Civ. P. 8(a)(2)). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation and citation omitted). And "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation and citation omitted). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 556 U.S. at 679.  In civil rights cases, "[m]ore than mere conclusory notice pleading is required . . . .  A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (quotation marks and alteration omitted).

A.    Claims for Injunctive Relief

As previously noted, Cotton seeks dismissal of the pending criminal charges and habeas corpus relief (*see* ECF No. 11).  Cotton's claims for injunctive relief are barred from the court's consideration by the Younger abstention doctrine.  Pursuant to Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971) and Samuels v. Mackell, 401 U.S. 66, 91 S. Ct. 764, 27 L. Ed. 2d 688 (1971), federal courts should abstain from granting injunctive or declaratory relief affecting a state criminal prosecution absent a showing of:  (1) evidence of bad faith prosecution, (2) irreparable injury if abstention is exercised by the federal court, or (3) the absence of an adequate alternative state forum where the constitutional issues can be raised.  *See* Hughes v. Attorney Gen. of Fla., 377 F.3d 1258, 1263 (11th Cir. 2004) (citing Younger, 401 U.S. at 45, 53–54).  Subsequent decisions have refined Younger to state that the exceptions occur only when the prosecution is brought expressly to harass the defendant or otherwise in bad faith, or when the statute under which the defendant is charged is clearly and flagrantly unconstitutional.  *See* Trainor v. Hernandez, 431 U.S.

434, 447, 97 S. Ct. 1911, 52 L. Ed. 2d 486 (1977); Huffman v. Pursue, Ltd., 420 U.S. 592, 611, 95 S. Ct. 1200, 43 L. Ed. 2d 482 (1975); The News-Journal Corp. v. Foxman, 939 F.2d 1499, 1507–09 (11th Cir. 1991); Redner v. Citrus Cnty., 919 F.2d 646, 650 (11th Cir. 1990).

With respect to the "irreparable injury" component of the Younger doctrine, irreparable injury does not include injury which is incidental to every prosecution brought lawfully and in good faith. *See* Kugler v. Helfant, 421 U.S. 117, 123–25, 95 S. Ct. 1524, 44 L. Ed. 2d 15 (1975) (citing Younger, 401 U.S. at 46). Irreparable injury exists if the statute under which a defendant is being prosecuted is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it" or if unusual circumstances exist that would call for equitable relief. Younger, 401 U.S. at 53–54 (citing Watson v. Buck, 313 U.S. 387, 402, 61 S. Ct. 962, 85 L. Ed. 1416 (1941)). The Eleventh Circuit has emphasized the narrowness of the irreparable injury exception to the Younger doctrine. *See, e.g.,* Butler v. Ala. Inquiry Comm'n, 245 F.3d 1257, 1265 (11th Cir. 2001) ("Also, while we today make no decision about the constitutionality of Alabama's judicial canons, we doubt that Canon 7(B)(2) patently or fragrantly violates the Constitution 'in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort

might be made to apply it.'") (citation omitted); <u>Kolski v. Watkins</u>, 544 F.2d 762, 766

(5th Cir. 1977) ("The statute in this case, challenged as facially unconstitutional by

the Petitioner, is certainly of questionable validity.  But we certainly cannot say at this

stage that this statute is 'flagrantly and patently violative of express constitutional

prohibitions in every clause, sentence and paragraph, and in whatever manner and

against whomever an effort might be made to apply it.'  As in <u>Younger</u>, 'the possible

unconstitutionality of a statute "on its face" does not in itself justify an injunction

against good-faith attempts to enforce it . . . '") (citations omitted).[3]

Here, resolving Cotton's constitutional challenges to his arrest, detention, and

ongoing criminal proceedings would significantly interfere with the pending state

criminal prosecution.  Furthermore, none of the exceptions to the <u>Younger</u> doctrine

appear to apply.  Moreover, there is an adequate state forum in which Cotton may

present his constitutional claims.  Because it appears from the face of the Amended

Complaint that the <u>Younger</u> abstention doctrine bars this court from interfering in the

state court criminal proceedings, any claims for injunctive relief (including Cotton's

request for dismissal of the charges and release from detention) must be dismissed.

B.    <u>Claims for Monetary Damages</u>

---

[3] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh
Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1,
1981.

Cotton's claims for monetary damages against the state court judge presiding over the criminal proceedings, The Honorable Kelvin C. Wells, are barred by the doctrine of judicial immunity. *See* Mireles v. Waco, 502 U.S. 9, 11, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991) ("Judicial immunity is an immunity from suit, not just from ultimate assessment of damages.") (citing Mitchell v. Forsyth, 472 U.S. 511, 526–27, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985)); Dennis v. Sparks, 449 U.S. 24, 27, 101 S. Ct. 183, 66 L. Ed. 2d 185 (1980). This immunity is retained even if it is alleged that the judge allegedly conspired with other parties to bring about a deprivation of another's rights. *See* Dykes v. Hosemann, 776 F.2d 942, 946 (11th Cir. 1985) (en banc) (citations omitted). Immunity may be overcome only (1) where the judge has not acted within his judicial capacity or (2) where the judge's actions, though judicial in nature, are taken in the complete absence of all jurisdiction. *See* Stump v. Sparkman, 435 U.S. 349, 356–57, 98 S.Ct. 1099, 55 L. Ed. 2d 331 (1978); Mireles, 502 U.S. at 11; Forrester v. White, 484 U.S. 219, 227, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988).

Whether an act by a judge is a "judicial" one relates to the nature of the act itself (i.e., whether it is a function normally performed by a judge), and to the expectations of the parties (i.e., whether the parties dealt with the judge in his judicial capacity. *See* Mireles, 502 U.S. at 11 (citing Stump, 435 U.S. at 362); *see also*

Simmons v. Conger, 86 F.3d 1080, 1085 (11th Cir. 1996). The relevant inquiry is the "nature" and "function" of the act, not the "act itself." Mireles, 502 U.S. at 13 (citing Stump, 435 U.S. at 362). In other words, the court must look to the particular act's relation to a general function normally performed by a judge.

A judge is not deprived of absolute immunity from liability for damages because an action he took was in error, was illegal, was done maliciously, or was in excess of his authority. See Stump, 435 U.S. at 355–57; see also Mireles, 502 U.S. at 11 (judicial immunity is not overcome by allegations of bad faith or malice). Rather, a judge is subject to liability only when he acted in clear absence of all jurisdiction, and knew or must have known that he was acting in such a manner. See Simmons, 86 F.3d at 1084–85 (citing Stump, 435 U.S. at 356–57). An act is done in "clear absence of all jurisdiction," for judicial immunity purposes, if the matter upon which the judge acted is clearly outside the subject matter jurisdiction of the court over which he presides. Dykes, 776 F.2d at 946-47 (citations omitted). The term "jurisdiction," as it applies to judicial immunity, means the "judicial power to hear and determine a matter, not the manner, method, or correctness of the exercise of that power." 48A C.J.S. Judges § 86. Furthermore, for the purposes of immunity, a judge's jurisdiction is construed broadly. See Stump, 435 U.S. at 357. Thus, where a court has some subject matter jurisdiction, there is sufficient jurisdiction for

immunity purposes. *See* Harper v. Merckle, 638 F.2d 848 (5th Cir. 1981) (judicial immunity extends to all judicial acts provided they do not fall clearly outside the judge's subject matter jurisdiction). The proper inquiry for determining judicial immunity is not whether the judge actually had jurisdiction, or even whether the judge exceeded his jurisdictional authority, but whether the challenged actions were obviously taken outside the scope of the judge's power. *See* Stump, 435 U.S. at 357 (quotation omitted).

In the instant case, the conduct of which Cotton complains is Judge Wells' determining the existence of probable cause and setting bail at $50,000. Determining the existence of probable cause and setting bail are functions normally performed by a judge. Furthermore, as Cotton is a party in the case over which Judge Wells is presiding, he is dealing with Judge Wells in the judge's judicial capacity. Moreover, Cotton does not allege, nor do the facts suggest, that Judge Wells acted in the complete absence of all jurisdiction. Therefore, Judge Wells is immune from civil liability.

Along similar lines, Cotton's claims against the Office of State Attorney, State Attorney Eddins, and Assistant State Attorney Richardson are subject to dismissal under the doctrine of prosecutorial immunity. In Imbler v. Pachtman, 424 U.S. 409, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976), the Supreme Court considered whether

traditional common-law immunities for prosecutors, which derived from immunities recognized for judges, applied to civil cases brought under 42 U.S.C. § 1983.  The Supreme Court concluded that they did.  *Id.*, 424 U.S. at 427–28 (citation omitted). The Court has explained that the common law gives absolute immunity in § 1983 actions for activities that are "'intimately associated with the judicial phase of the criminal process.'"  <u>Van de Kamp v. Goldstein</u>, 555 U.S. 335, 341, 129 S. Ct. 855, 172 L. Ed. 2d 706 (2009) (quoting <u>Imbler</u>, 424 U.S. at 430); *accord* <u>Jones v. Cannon</u>, 174 F.3d 1271, 1281 (11th Cir. 1999).

"[A] functional approach has evolved to determine whether executive branch public officials should be granted absolute immunity for taking particular actions, or whether they should enjoy instead only the qualified immunity normally afforded public officials."  <u>Jones</u>, 174 F.3d at 1282.  This functional approach looks to the nature of the function performed, not to the identity of the person who performed it. *See* <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 269, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993).  Under this functional analysis, executive branch officials are entitled to absolute immunity for certain functions intimately associated with the judicial process. <u>Van de Kamp</u>, 555 U.S. at 343.

Subsequent Supreme Court decisions established outer bounds on what activities qualify for prosecutorial immunity and to which individuals it applies.

Prosecutorial immunity applies, for instance, to the prosecutor's actions in initiating a prosecution and presenting the State's case. *See* Imbler, 424 U.S. at 431. A prosecutor is immune for malicious prosecution. *See* Malley v. Briggs, 475 U.S. 335, 342–43, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986). Prosecutors are immune for appearances before a court and conduct in the courtroom, including examining witnesses and presenting evidence in support of a search warrant during a probable cause hearing. *See* Burns v. Reed, 500 U.S. 478, 490–92, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991); Kalina v. Fletcher, 522 U.S. 118, 126, 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997).

Applying these principles, the Eleventh Circuit has emphasized that, "[a] prosecutor enjoys absolute immunity from allegations stemming from the prosecutor's function as advocate." Jones, 174 F.3d at 1281. Such absolute immunity "extends to a prosecutor's acts undertaken in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Id.* (quotation marks omitted); *accord* Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1279 (11th Cir. 2002). Prosecutors have absolute immunity when "filing an information without investigation, filing charges without jurisdiction, filing a baseless detainer, offering perjured testimony, suppressing exculpatory evidence, refusing to investigate . . . complaints about the prison system, [and] threatening . . . further

criminal prosecutions . . . ."  Hart v. Hodges, 587 F.3d 1288, 1295 (11th Cir. 2009) (quotation marks and citations omitted).

Here the conduct of which Cotton complains is ASA Richardson's filing and proceeding on the charges, and presenting evidence at the suppression hearing.  This conduct concerned Richardson's function as an advocate for the State of Florida.  Therefore, Richardson is entitled to prosecutorial immunity from Cotton's § 1983 claims.

With respect to Cotton's claims against the Public Defender's Office, Public Defender Miller, and Assistant Public Defender White, none of these parties are subject to liability under § 1983, because none of them is a state actor.  *See* Rolle v. Glenn, 712 F. App'x 897, 899 (11th Cir. 2017) (finding that "the district court properly determined, as to the public defenders, that they are not liable because they are not state actors for purposes of § 1983") (citing Polk Cty. v. Dodson, 454 U.S. 312, 325, 102 S. Ct. 445, 453, 70 L. Ed. 2d 509 (1981) (holding that a public defender does not act under color of state law, as required under § 1983, when he performs a lawyer's traditional function by acting as defense counsel in a criminal proceeding)).  Therefore, these Defendants are not subject to liability under § 1983.

Cotton's claims for monetary damages against the remaining Defendants (the Walton County Sheriff's Office and its employees, the Defuniak Springs Police

Department and its employees, and the Walton County Jail) are subject to dismissal for failure to state a claim upon which relief may be granted. Cotton seeks to recover monetary damages for "severe stress" and humiliation resulting from his arrest and continued detention; however, these claims are barred by 42 U.S.C. § 1997e(e). In an action pursuant to 42 U.S.C. § 1983, a plaintiff may recover damages for monetary loss, physical pain and suffering, mental and emotional distress, impairment of reputation, and personal humiliation. Slicker v. Jackson, 215 F.3d 1225, 1231 (11th Cir. 2000). However, under 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Section 1997e(e) does not define physical injury, but the Eleventh Circuit has concluded that in order to satisfy the statute "the physical injury must be more than de minimis, but need not be significant." Harris v. Garner, 190 F.3d 1279, 1286 (11th Cir. 1999), vacated, in part, on other grounds, 216 F.3d 970 (11th Cir. 2000) (en banc).

Here, Cotton does not allege, nor can he plausibly show, he suffered more than de minimis physical injury as a result of his allegedly false arrest, illegal detention, and continued prosecution. Therefore, so long as Cotton is in custody, he may not recover compensatory or punitive damages for mental anguish he suffered as a result.

C.    State Law Claims

Finally, to the extent Cotton asserts state law claims, they should be dismissed without prejudice to his pursuing them in state court.  It is well established that once a plaintiff's federal claims are dismissed, there remains no independent federal jurisdiction to support the court's exercise of supplemental jurisdiction over any state claims against a defendant.  *See* Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1352 (11th Cir. 1997).  Title 28 U.S.C. § 1367(c)(3) provides that the district court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction.  *See* United Mine Workers v. Gibbs, 383 U.S. 715, 725–26, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966).  Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction.  *See* Baggett, 117 F.3d at 1353 (citing Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1569 (11th Cir. 1994)).  The Eleventh Circuit has encouraged district courts to dismiss any remaining state claims when the federal claims have been dismissed prior to trial.  *See* Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004).

Taking these factors into account in this case, the court concludes that any state law claim asserted by Cotton should be dismissed to permit him to pursue it in a more appropriate forum.  While it would be convenient for Cotton to continue litigating his

case in this court, this court has a substantial number of original jurisdiction cases awaiting review, and neither judicial economy nor fairness to other litigants supports retaining jurisdiction of Cotton's state claim(s) and delaying justice in other cases. Furthermore, the state court is best equipped to research and rule on matters of state law, and comity would suggest that it should be allowed to do so. Moreover, the supplemental jurisdiction statute contains a tolling provision. *See* 28 U.S.C. § 1367(d) (state claims asserted in federal court along with "related" federal claims "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed"); Artis v. District of Columbia, — U.S. —,138 S. Ct. 594, 199 L. Ed. 2d 473 (2018). Thus, Cotton's state law claims are tolled while they are pending in federal court, and he has 30 days after dismissal by the federal court to re-file in state court. *See* Artis, *supra*; Krause v. Textron Fin. Corp., 59 So. 3d 1085 (Fla. 2011). Cotton's pursuit of any state law claim in state court would not be prejudiced by this court's declining to exercise supplemental jurisdiction over those claims.

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

1.     That Plaintiff's federal claims for injunctive relief be **DISMISSED without prejudice** pursuant to Younger v. Harris, 401 U.S. 37 (1971);

2.     That Plaintiff's federal claims for monetary damages against Defendants Wells, Office of State Attorney, State Attorney Eddins, and Assistant State Attorney

Richardson be **DISMISSED with prejudice** for seeking monetary relief against a defendant who is immune from such relief, pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii);

3. That Plaintiff's federal claims for monetary damages against Defendants Office of Public Defender, Public Defender Miller, and Assistant Public Defender White be **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii);

4. That Plaintiff's federal claims for monetary damages against Defendants Detective Rockett, Detective Arnold, Investigator Paul, "Unnamed Deputy in Arrest Report," Walton County Sheriff's Office, Sheriff Michael Adkinson, Jr., Office of the City Marshal/Defuniak Springs Police Department, Police Chief/City Marshal Mark Weeks, and Walton County Jail be **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted, pursuant to and 28 U.S.C. § 1915(e)(2)(B)(ii) and 42 U.S.C. § 1997e(e);

5. That Plaintiff's state law claims be **DISMISSED without prejudice**; and

6. That the clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida, this 28<u>th</u> of November 2018.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**